2012 WY 19

Randall SINCLAIR and Carmen Sinclair, Appellants (Plaintiffs),

v.

The CITY OF GILLETTE, Wyoming, and Stetson Engineering, Inc., a Wyoming corporation, Appellees (Defendants).

No. S–11–0164.

Supreme Court of Wyoming.

Feb. 9, 2012.

Representing Appellants: Randall T. Cox, Cox, Horning & McGrath, LLC, Gillette, Wyoming.

Representing Appellees: Catherine M. Fox, Davis & Cannon, LLP, Cheyenne, Wyoming; Argument by Ms. Fox.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

BURKE, Justice.

[¶ 1]   Randall and Carmen Sinclair brought an action against the City of Gillette asserting three claims for relief, including a claim for damages under the Wyoming Governmental Claims Act. The City asserted governmental immunity and moved to dismiss that claim. The district court granted the motion to dismiss, and the Sinclairs appealed. We agree with the district court that the Sinclairs' claim is not cognizable under the Wyoming Governmental Claims Act, and will affirm the district court's order dismissing the claim.

### ISSUES

[¶ 2]   The Sinclairs raise two issues:

1.   Did the district court err when it concluded that the Sinclairs' damages claims against the City of Gillette are barred by the Wyoming Governmental Claims Act?

2.   Does the application of immunity based on the Wyoming Governmental Claims Act as applied to negligence, trespass, and forcible taking of property claims which arise in the operation of public utilities and services violate the due process, equal protection, and open court protections of the United States and Wyoming Constitutions?

### FACTS

[¶ 3]   The Sinclairs own property in Campbell County, Wyoming, near the City of Gillette.[1]   In the early summer of 2008, the Sinclairs noticed survey crews setting up instruments on their property. The surveyors were working under a contract with the City to develop an expansion of the City's storm drain system. The Sinclairs objected, asserting that the City had no right to install the storm drain across their property. Despite the Sinclairs' protests, the surveyors continued their work. The Sinclairs took their complaint to the City, still maintaining that it had no easement or other legal right to locate the storm drain on their property. According to the Sinclairs' complaint, the engineering staff "forcefully" disagreed.

[¶ 4]   During the summer of 2008, City employees and contractors made a large excavation across the Sinclairs' property. They installed a concrete storm drain approximately five feet tall and fourteen feet wide. They refilled the excavation and graded the lot. The Sinclairs continued to protest that the City had no legal right to install the storm drain across their property, but to no avail.[2] The storm drain currently remains in place.

[¶ 5]   Pursuant to the Wyoming Governmental Claims Act, specifically Wyo. Stat. Ann. § 1–39–113 (LexisNexis 2009), the Sinclairs presented notice of their claim to the City. They followed up by filing a complaint in the district court, setting forth three claims for relief. In the first, they sought an injunction ordering the City to remove the storm drain and restore the property. In the second, entitled "Statutory Damages," they requested compensation pursuant to

---

1.   Because this case comes before us after a motion to dismiss, the facts have not yet been developed. This factual summary is based on the allegations of the complaint.

2.   Apparently, the City was unaware that the property had been conveyed to the Sinclairs and purchased an easement from the prior owners of the property.

Wyoming's Eminent Domain Act, specifically Wyo. Stat. Ann. §§ 1–26–506—508.[3] In the third, entitled "Alternative Damages," the Sinclairs claimed that, if they were not granted injunctive relief, they were entitled to an award of damages, including the loss in value of the land, punitive damages against the City's contractor, and attorneys' fees and litigation costs.

[¶ 6] Pursuant to W.R.C.P. 12(b)(6), the City filed a motion to dismiss the Sinclairs' third claim. It asserted that the Wyoming Governmental Claims Act preserves governmental immunity with certain specified exceptions, and that the Sinclairs' claim did not fit within any of the statutory exceptions. The City conceded that the Sinclairs may be entitled to compensation pursuant to the Wyoming Eminent Domain Act, but maintained that the Wyoming Governmental Claims Act barred the Sinclairs' third claim for relief. The Sinclairs opposed the City's motion to dismiss, contending that the claim fit within one of the Act's exceptions, and that the City was not immune from suit.

[¶ 7] After briefing and oral argument, the district court concluded that the Sinclairs' third claim was not authorized under the Wyoming Governmental Claims Act, and granted the City's motion to dismiss the claim. In response to the Sinclairs' unopposed motion, the district court certified pursuant to W.R.C.P. 54(b) that this dismissal was a final judgment as to the Sinclairs' third claim, and that there was no just reason to delay entry of final judgment on the claim. The Sinclairs have appealed that final judgment, and the parties agreed to stay the remainder of the case pending the result of the appeal.

## STANDARD OF REVIEW

█ [¶ 8]

When reviewing W.R.C.P. 12(b)(6) motions to dismiss, we accept the facts stated in the complaint as true and view them in the light most favorable to the plaintiff. We will sustain such a dismissal when it is certain from the face of the complaint that

the plaintiff cannot assert any fact which would entitle him to relief.

*Belden v. Lampert,* 2011 WY 83, ¶ 6, 251 P.3d 325, 327 (Wyo.2011), quoting *Cramer v. Powder River Coal, LLC,* 2009 WY 45, ¶ 35, 204 P.3d 974, 983 (Wyo.2009). We must interpret the Wyoming Governmental Claims Act in order to determine whether the Sinclairs can assert a claim under its provisions. When we interpret statutes, our goal is to give effect to the intent of the legislature, and we "attempt to determine the legislature's intent based primarily on the plain and ordinary meaning of the words used in the statute." *Krenning v. Heart Mountain Irrigation Dist.,* 2009 WY 11, ¶ 9, 200 P.3d 774, 778 (Wyo.2009). Statutory interpretation presents a question of law, so our review of the district court's conclusions is *de novo.* *Id.; Sinclair Oil Corp. v. Wyo. Dep't of Revenue,* 2010 WY 122, ¶ 7, 238 P.3d 568, 570 (Wyo.2010).

[¶ 9] With specific regard to the Wyoming Governmental Claims Act, we have said that we should not "enlarge, stretch, expand[,] or extend" the statutory language to include "matters not falling within its express provisions." *State v. Watts,* 2008 WY 19, ¶ 19, 177 P.3d 793, 798 (Wyo.2008). Instead, we use our "standard rules" of statutory interpretation "to determine whether the legislature intended that immunity be waived for a particular claim and will not resort to reliance upon previous unsupported and unnecessary suggestions that the act is to be interpreted either liberally or strictly." *Id.,* ¶ 20, 177 P.3d at 798–99.

## DISCUSSION

█ [¶ 10] We have often explained that the Wyoming Governmental Claims Act "provides broad governmental immunity from tort liability," but "also establishes a number of specified exceptions." *Krenning,* ¶ 21, 200 P.3d at 781. "Unless a claim falls within one of the statutory exceptions to governmental immunity, it will be barred." *City of Torrington v. Cottier,* 2006 WY 145, ¶ 7, 145 P.3d

---

**3.** The complaint refers to Wyo. Stat. Ann. §§ 1–25–506—508, but there are no such statutory sections. When read in context, it is obvious that this is a typographical error, and that the Sinclairs intended to refer to Wyo. Stat. Ann. §§ 1–26–506—508.

1274, 1277 (Wyo.2006). The Sinclairs' complaint does not specify any of the statutory exceptions to governmental immunity. They now contend, however, that the exception applicable to their claim is contained in Wyo. Stat. Ann. § 1–39–108(a), which provides as follows:

A governmental entity is liable for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation of public utilities and services including gas, electricity, water, solid or liquid waste collection or disposal, heating and ground transportation.

[¶ 11] The negligence specifically alleged in the Sinclairs' complaint is that:

[E]mployees of the City were negligent and careless in failing to properly investigate the status of ownership of the land, particularly after the [Sinclairs] repeatedly complained that they owned the land and the City had no right to build the storm drain on the [Sinclairs'] land. Employees of the City negligently delegated the duty to research land ownership to Stetson Engineering.

The Sinclairs also alleged that the City's employees "either negligently made assumptions or intentionally stated untruths to the [Sinclairs] about their rights to use the [Sinclairs'] land," and "either negligently made assumptions or intentionally stated untruths to the [Sinclairs] about their rights to build the storm drain extension." No other allegations of negligence are made in the complaint. For purposes of this appeal, the City has conceded that its employees and contractors were negligent in their investigation of the ownership of the land.

[¶ 12] As noted before, the Wyoming Governmental Claims Act provides that a governmental entity may be held liable for "the negligence of public employees while acting within the scope of their duties in the operation of public utilities." Accordingly, the basic question we must answer is whether the City's negligence in failing to ascertain the ownership of the Sinclairs' property constitutes negligence in the "operation" of a public utility.

[¶ 13] We considered the statutory term "operation" in the case of *Sawyer v. City of Sheridan*, 793 P.2d 476 (Wyo.1990), in which the Sawyers' property was damaged due to the failure of iron water pipes. The Sawyers claimed that the City was negligent in adopting an ordinance requiring iron pipes, and asserted that immunity for this negligence was waived because it related to the operation of a public utility. We did not think it necessary to provide a definition for the term operation, because

even a superficial analysis of that exception to immunity reveals that the claim asserted is not encompassed by that statute. The asserted wrongdoing on the part of the City of Sheridan does not spring from "operation" of a public utility. The claim is clearly one which asserts that the Sheridan City Council was negligent in adopting an ordinance which proved over time to be unsatisfactory or perhaps even ill-considered.... Here, the complaint is not that a city employee committed an act of negligence in the operation of the water system; but, rather, that the Sheridan City Council should never have enacted an ordinance which included a requirement to use iron pipe. The claim simply does not fit in the niche provided by W.S. 1–39–108(a).

*Id.* at 478.

[¶ 14] The statutory term "operation" was further analyzed in *Cottier*, ¶¶ 8–13, 145 P.3d at 1278–80. In that case, Mr. Cottier's property was damaged by backed up sewage. The back-up was caused by tree roots in the main sewer line, and Mr. Cottier pursued a claim against the City for negligence in failing to keep the sewer lines open. The City moved to dismiss on the basis of governmental immunity. While acknowledging that there was an exception for the "operation" of a public utility, the City asserted that its negligence, if any, related to the maintenance of the sewer lines, not in their operation.

[¶ 15] We wrote that:

the proper question is what did the legislature mean by the phrase "operation of a public utility?" "Operation" is not further defined by the statute. When a term is

not defined, we will furnish an ordinary and obvious meaning. *The American Heritage College Dictionary 975 (4th ed. 2004), defines "operation" as the "state of being operative or functional." See also Webster's Ninth New Collegiate Dictionary 827 (1991). Black's Law Dictionary 1092 (6th ed. 1990), defines "operation" as "the process of operating or mode of action."* ...

Wyo. Stat. Ann. § 1–39–108 waives immunity for the negligence of public employees in the operation of public utilities and services including, solid or liquid waste collection or disposal. *In other words, the statute waives immunity for negligence in keeping the public utility operable or functional.*

*Cottier,* ¶¶ 8, 14, 145 P.3d at 1278, 1280 (emphasis added; footnote and internal citation omitted).

[¶ 16] The City of Gillette concedes for purposes of this appeal that it was negligent in investigating the ownership status of the Sinclairs' property. We conclude, however, that such negligence is unrelated to the "operation" of the storm drain. The storm drain operates and functions regardless of who owns the property. Because negligence in determining the legal status of the property is not negligence in the operation of the storm drain, the Sinclairs' claim "simply does not fit in the niche provided" under the Wyoming Governmental Claims Act. *Sawyer,* 793 P.2d at 478.

[¶ 17] The Sinclairs also brought a claim against the City under the Wyoming Eminent Domain Act. One section of that Act, Wyo. Stat. Ann. § 1–26–516, is entitled "Action for inverse condemnation," and provides that:

> When a person possessing the power of condemnation takes possession of or damages land in which he has no interest, or substantially diminishes the use or value of land ... before filing an action of condemnation, the owner of the land may file an action in district court seeking damages for the taking or damage and shall be granted litigation expenses if damages are awarded to the owner.

We have established that the Wyoming Eminent Domain Act "covers the entire subject of eminent domain." *L.U. Sheep Co. v. Board of County Comm'rs,* 790 P.2d 663, 669 (Wyo.1990). Accordingly, the Act provides the exclusive remedy available in cases of inverse condemnation. *See Waid v. State,* 996 P.2d 18, 23 (Wyo.2000). The fact that the Sinclairs' exclusive remedy is under the Wyoming Eminent Domain Act reinforces our conclusion that they have no viable cause of action against the City under the Wyoming Governmental Claims Act.

[¶ 18] The Sinclairs' second issue, asserting violations of their constitutional rights, is without merit. We have previously upheld the constitutionality of the Wyoming Governmental Claims Act. *See, e.g., Krenning,* ¶ 36, 200 P.3d at 785. Moreover, the gist of the Sinclairs' assertion is that they are being deprived of access to the courts. That is incorrect. Despite the dismissal of their claim under the Wyoming Governmental Claims Act, they still have access to the courts to pursue their claim for injunctive relief and their inverse condemnation claim under the Wyoming Eminent Domain Act.

[¶ 19] Affirmed.